## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **ALONZO JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:17-00608** |
| | ) | |
| **CASE MANAGER JOHNSON, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 39), filed on November 21, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the Defendants in moving to dismiss. (Document No. 41.) Plaintiff filed his Response/Affidavit of Facts on December 26, 2017. (Document No. 46.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motion should be granted.

### PROCEDURAL HISTORY

On January 17, 2017, Plaintiff, acting *pro se*[1] and an inmate at FCI McDowell filed his Application to Proceed Without Prepayment of Fees and Complaint in this matter seeking relief for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

<u>Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Case Manager Johnson; (2) Counselor G. Prout; (3) Counselor Pilant; (4) Case Manager Muncy; (5) Unit Manager Huffman; and (6) Warden B.J. Johnson. (Document No. 2.) In his Complaint, Plaintiff alleges that Defendants have violated his constitutional rights. (<u>Id.</u>) Specifically, Plaintiff alleges that Defendants have retaliated against him for filing administrative remedies and have denied him his right to procedural due process. (<u>Id.</u>) Plaintiff explains that he filed an administrative remedy against Counselor Prout complaining that Counselor Prout arbitrarily sanctioned Plaintiff beyond the lawful scope of the incident. (<u>Id.</u>, p. 2.) Specifically, Plaintiff complained in his administrative remedy that Counselor Prout failed to lift Plaintiff's restrictions concerning the commissary after Plaintiff had completed his sanction for the incident. (<u>Id.</u>, pp. 2 – 4.) Plaintiff alleges that when he attempted to informally resolve the matter, Counselor Prout "became belligerent by telling Plaintiff 'I'm not going to do anything for you and you should call on Allah to help.'" (<u>Id.</u>) Plaintiff alleges that following the filing of the administrative remedy, Counselor Prout retaliated against Plaintiff by filing a second incident report against Plaintiff on January 27, 2016. (<u>Id.</u>, pp. 4 – 5.) Plaintiff alleges that he is innocent of the charges contained in the incident report, which can be proved by viewing of video surveillance. (<u>Id.</u>) Plaintiff, however, contends that Case Manager Johnson and UM Huffman refused to view the video surveillance. (<u>Id.</u>) Plaintiff alleges that Case Manager Johnson and UN Huffman have conspired with Counselor Prout to retaliate against Plaintiff due to his filing of administrative remedies. (<u>Id.</u>) Plaintiff alleges that Warden B.J. Johnson was aware of the foregoing but failed to take appropriate action to resolve the issue. (<u>Id.</u>, p. 5.) Plaintiff further contends that staff's failure to review the video footage violated his due process rights. (<u>Id.</u>, p. 6.) Plaintiff alleges that Counselor Prout again retaliated

2

against Plaintiff by filing a third incident report against Plaintiff on April 25, 2016. (Id., pp. 6 – 8.) Plaintiff alleges that Counselor Prout charged Plaintiff with being in an unauthorized area based upon Plaintiff allegedly sleeping on the lower bunk. (Id.) Plaintiff contends that when Case Manager Muncy informed Counselor Prout that Plaintiff had a lower bunk assignment, Counselor Prout revised the incident report to allege Prout was sleeping on the top bunk. (Id.) Plaintiff further alleges that Counselor Prout inappropriately entered the UDC hearing, which was a violation of BOP policy. (Id.) Plaintiff complains "Mrs. Muncy allowed Petitioner's due process rights to be violated by letting Prout to be a conflict of interest to be present during the UDC hearing." (Id.) Plaintiff alleges that Muncy found Plaintiff guilty of being in an unauthorized area, which he appealed. (Id.) Plaintiff acknowledges that this "incident report was later expunged after petitioner filed a continued administrative remedy to the Mid-Atlantic Regional on 8-4-2016." (Id.) Plaintiff complains, however, that he suffered a 60-day loss of commissary and a 30-day loss of phone privileges before the incident was expunged. (Id.) Plaintiff alleges that the foregoing exhibits retaliation by Counselor Prout. (Id.) Finally, Plaintiff alleges that Counselor Pilant "trashed" Plaintiff's cell during a search as part of the conspiracy to retaliate against Plaintiff for filing administrative remedies. (Id.) As relief, Plaintiff requests monetary damages and his transfer to a different BOP facility. (Id., p. 12.) Plaintiff attaches a copy of his administrative remedies and the incident reports as Exhibits. (Document No. 2-1, 4, and 6.)

On June 26, 2017, Plaintiff filed a Motion to Amend and Supplement to his Complaint. (Document Nos. 7 and 8.) Plaintiff alleges that Defendants continue to retaliate against him for filing administrative remedies. (Id.) Plaintiff further names Counselor Pilant's husband, Unit Manager Pilant, as a defendant. (Document No. 7, p. 1.) Plaintiff supplements his Complaint to include allegations that Defendants have continued to retaliate against him by refusing to allow

3

him to shower after exercising and by moving Plaintiff to the C3 Housing Unit. (Id.) As Exhibits, Plaintiff attaches a copy of his administrative remedies. (Document No. 7, pp. 3 – 6 and Document No. 8, pp. 2 - 3.) By Order entered on July 7, 2017, the undersigned granted Plaintiff's Motion to Amend and Supplement to his Complaint. (Document No. 9.)

By Order also entered on July 7, 2017, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 10.) The Clerk issued process on the same day. (Document Nos. 11 and 12.) On November 21, 2017, the Defendants' filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 39 and 40.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) "Plaintiff failed to fully exhaust his administrative remedies" (Document No. 40, pp. 6 – 8.); (2) "The Supreme Court has not established a Bivens cause of action for false allegations or for retaliation under the First Amendment" (Id., pp. 8 – 13.); (3) "Plaintiff's allegations of false disciplinary actions fail to state claim (Id., pp. 13 – 14.); (4) "There was no due process violation in Plaintiff's disciplinary actions (Id., pp. 14 – 15.); (5) "Verbal comments or threats do not violation Plaintiff's constitutional rights" (Id., p. 15.); (6) "Plaintiff has no right to the institution of his choice" (Id., pp. 15 – 16.); (7) "Plaintiff has no right to programming" (Id., p. 16.); (8) "Plaintiff makes no specific allegations against Defendant D. Pilant" (Id., p. 17.); (9) "Defendants are entitled to qualified immunity" (Id., pp. 17 – 18.); and (10) "Respondent superior is not applicable" (Id., pp. 18 – 19.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 39-1.); (2) A copy of Incident Report No. 2809293 dated January 27, 2016 (Document No. 39-2, pp. 1 – 3.); (3) A copy of Administrative Remedy No. 852347 (Id., pp. 4 – 15, 20 - 25.); (4) A copy of Administrative Remedy No. 870374 (Id., pp. 16 – 19, 29, 54.) ; (5) A

4

copy of Plaintiff's Administrative Remedy Generalized Retrieval (<u>Id.</u>, pp. 30 – 49.); (6) A copy of Administrative Remedy No. 882198 (<u>Id.</u>, pp. 50 – 51, 53, 55 - 59.); (7) A copy of Administrative Remedy No. 904025-F1 (<u>Id.</u>, pp. 61 – 65.); (8) A copy of Administrative Remedy No. 865981-F1 (<u>Id.</u>, p. 27.); (9) A copy Administrative Remedy 867989-F1 (<u>Id.</u>, p. 28.); (10) A copy of a Memorandum dated January 26, 2017, from SIS Technician Ronald Randall regarding a video of Plaintiff (<u>Id.</u>, p. 52.); (11) A copy of Plaintiff's Inmate Chronological Disciplinary Record (<u>Id.</u>, p. 60.); (12) The Declaration of B. Huffman (Document No. 39-3.); (13) The Declaration of J. Muncy (Document No. 39-4.); (14) The Declaration of M. Pilant (Document No. 39-5.); and (15) The Declaration of G. Prout (Document No. 39-6.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 27, 2017, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 41.) On December 26, 2017, Plaintiff filed his Response/Affidavit of Facts. (Document No. 46.)

## <u>FACTUAL HISTORY</u>

On January 27, 2016, Counselor Prout issued an Incident Report charging Plaintiff with Failure to Follow Safety or Sanitation Regulations in violation of Prohibited Act Code 317. (Document No. 39-2, pp. 1 - 2.) Specifically, Counselor Prout described the incident as follows:

> On January 27, 2016 at approximately 9:40 a.m. while walking through Unit B-1, I noticed inmate Johnson, Alonzo 21857-029 working out in the laundry room. When inmate Johnson noticed that I was standing in front of the laundry room window, he stopped working out. I opened the laundry room door and advised inmate Johnson that recreation was open. I also advised inmate Johnson that it was posted on the unit bulletin boards about inmates working out in the unit. Inmate Johnson has been in the unit long enough to know the proper work out area is in recreation.

(<u>Id.</u>, p. 1.) On the same day, an investigating officer informed Plaintiff of the charges and took

Plaintiff's statement. (Id.) Plaintiff stated that "This is false, he never seen me working out." (Id., p. 2.) A Unit Disciplinary Committee ["UDC"] reviewed the Incident Report on February 3, 2016. Plaintiff made a statement stating that "Mr. Prout is lying." (Id., p. 1.) Based upon the statement of staff and the inmate's admission that he received the Inmate A&O Handbook containing the rules and regulations of the institution, the UDC determined that Plaintiff committed the prohibited act as charged and sanctioned Plaintiff to a loss of phone privileges of 30 days. (Id.)

Plaintiff appealed the UDC's decision through the administrative remedy process and the Incident Report was remanded back to the UDC for reconsideration of the evidence and for the UDC to amend Section 19 to identify the specific evidence relied upon in finding Plaintiff committed the prohibited act. (Remedy ID Nos. 852347-R1 and 870374-R1). (Id., pp. 4 – 5, 16 – 17, 20 .) Upon reconsideration on October 27, 2016, the UDC amended Section 19 and again found Plaintiff guilty as charged in the Incident Report. (Id., p. 3.) Plaintiff, however, persisted in his claim of retaliation and that video footage would establish his innocence (Remedy ID Nos. 852347, 865973, 865981, 867989, 870374, and 882198). (Id., pp. 19, 26, 27, 29, 53, 55, 57, 59.) As a result of Remedy ID No. 882198-R1, the Regional Office requested SIS staff to search for any existing video footage related to the incident. (Id., p. 52.) The Regional Office, however, advised Plaintiff that no video footage was found by SIS staff. (Id., pp. 50 – 51.) The Regional Office further advised Plaintiff that there was no evidence that the reporting officer had falsified the incident report, nor was there any evidence that institution staff had conspired against Plaintiff to retaliate against him. (Id.)

Plaintiff only has two other Incident Reports appearing on his record (Incident Report No. 2502461 (10/10/2013) and Incident Report No. 2918747 (11/14/2016). (Id., p. 60.) The foregoing Incident Report are not at issue in this action. The remaining Incident Reports that Plaintiff

complains of have been expunged from his record. (Id., p. 60.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 -

87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts

in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the

claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary

judgment will be granted unless a reasonable jury could return a verdict for the non-moving party

on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will

support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.    **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates

exhaust available administrative remedies prior to filing civil actions though the administrative

process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v.

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S.

516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion

requirement applies to all inmate suits about prison life whether they involve general

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983
> of this title or any other federal law, by a prisoner confined in any jail, prison,
> or other correction facility until such administrative remedies as are available
> are exhausted.

circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that

prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra;

Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may

11

seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection

to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his claim that he was moved to a different housing unit out of retaliation as set forth in his Supplement and Amendment to his Complaint. (Document No. 40, pp. 6 – 8.) Defendants argue that "[n]one of Plaintiff's remedies filed after January 17, 2017 (the date on which he filed the Complaint), indicate that he raised an issue about being moved to a different housing unit." (Id., p. 8.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 39-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration:

> 10.    Plaintiff failed to exhaust administrative remedies regarding his claim set forth in his Supplement and Amendment to his complaint, where he alleges that he was moved to a different housing unit out of retaliation.
>
> 11.    None of Plaintiff's remedies filed after January 17, 2017 (the date on which he filed the Complaint), indicate that he raised an issue about being moved to a different housing unit.

(Id., p. 2.) As Exhibits, Defendants attach a copy of Plaintiff's Administrative Remedy History and relevant pages of Administrative Remedy ID Nos. 852347, 867989, 865981, 870374, 882198, 904025. (Document No. 39-2.) Accordingly, Defendants argue that Plaintiff's claim concerning his transfer to a different housing unit is unexhausted and should be dismissed. (Document No. 40, pp. 6 - 8.) Defendants acknowledge that Plaintiff filed several administrative remedies concerning the disciplinary actions taken against him, "which makes it difficult to ascertain whether exhaustion was in fact appropriate." (Id., p. 8.) Therefore, Defendants do not appear to dispute that

13

Plaintiff fully exhausted his claims based upon the disciplinary actions taken against Plaintiff. (Id.)

In his Response, Plaintiff does not dispute that he failed to exhaust his administrative remedies concerning his transfer to a different housing unit. (Document No. 46, pp. 1 - 2.) Plaintiff explains that he filed a "Letter Motion," which was construed as a "Supplement and Amendment." (Id.) Plaintiff acknowledges that in the above document he explained he had filed additional administrative remedies concerning Incident Reports and as a result of such, he was moved to a different housing unit. (Id.) Plaintiff states that he "was not seeking any remedy for being placed in another housing unit." (Id.) Plaintiff states that he was merely "trying to get the Court to take notice of the Defendants' pattern of retaliation." (Id.)

To the extent Plaintiff is asserting a Bivens claim based upon his transfer to a different housing unit, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the PLRA. Plaintiff fails to produce any documents indicating that he exhausted the foregoing claim. Additionally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. Based on the foregoing, the undersigned recommends that Plaintiff's claim regarding the foregoing issue be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

## 2.    No Extension of Bivens:

In their Motion, Defendants argue that Bivens liability has not been extended to claims of retaliation in violation of the First Amendment. (Document No. 40, pp. 8 - 13.) Defendants contend that Plaintiff's claim fails under Ziglar v. Abbasi. (Id.) Defendants note that the United States Supreme Court has only approved a Bivens cause of action in three cases – Bivens, Davis, and Carlson. (Id., pp. 8 – 10.) Defendants argue that Plaintiff's claim differs in a meaningful way from

14

the above cases, thereby presenting a "new context" subject to a special factor analysis. (Id.) Under the special factor analysis, Defendants first argue that Bivens should not be extend to Plaintiff's claim because Plaintiff had alternative remedies available. (Id., pp. 10 – 11.) Specifically, Defendants note that Plaintiff had administrative remedies that he could pursue, and did pursue, some of which were successful. (Id.) Second, Defendants argue that the Court should hesitate to expand Bivens based on the following special factors: (1) Separation of powers concerns and congressional intent; (2) Systemwide impact and costs associated with creation of a Bivens remedy; and (3) The harmful effect on discharge of duties. (Id., pp. 11 – 13.) As to separation of powers concerns and congressional intent, Defendants state that "Congress has enacted legislation surrounding prisoner rights, specifically the PLRA and the Prison Rape Elimination Act (PREA), and it is 'telling' that Congress has never created a damages cause of action against a federal prison official in his or her individual capacity." (Id., p. 11.) As to the systemwide impact and costs, Defendants argue "[t]he sheer volume of potential suits arising from the expansion of Bivens in the federal prison context presents a heavy burden and significant costs on the system." (Id., p. 12.) As to any harmful effect, Defendants contends there is no question that creating a Bivens remedy in the context presented here would have a harmful effect on the discharge of official duties by correctional officers. (Id.) Defendants explain that if "individual officers could be sued, at risk of personal liability, for alleged 'retaliation' by enforcing prison policy, there is no question that some officers might refrain from taking urgent and lawful action in discharging their duties." (Id.) Accordingly, Defendants conclude that Bivens should not be extend to Plaintiff's First Amendment retaliation claim. (Id.)

In Response, Plaintiff argues that he has stated a valid constitutional claim for retaliation and he should be allowed to pursue his claim under Bivens. (Document No. 46, pp. 2 – 3.) Next,

Plaintiff argues that "Defendants seem to be conceding to the facts of this civil suit, but say I should have filed the suit as remedy under a habeas corpus or some other relief." (Id., p. 3.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend Bivens to permit suit against a federal agency); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend Bivens to an Eighth Amendment claim against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend Bivens in a military context). Recently, the Supreme Court made clear the very limited scope of Bivens actions and that "expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously

16

recognized by the Supreme Court, closer scrutiny is required. Id.

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. Id. at 1854-55(citations omitted). The Abbasi Court explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In the instant case, Plaintiff alleges that Defendants retaliated against him for submitting administrative remedies in violation of his First Amendment rights. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's retaliation claim presents "a new Bivens context."

The Supreme Court has "never held that *Bivens* extends to First Amendment claims."

17

Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under Bivens because petitioners did not assert the above argument. Id.; also see Wood v. Moss, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case.") The undersigned further acknowledges that the just prior to the Supreme Court's decision in Abbasi, the Fourth Circuit clarified that inmates have a clearly established First Amendment right to file prison grievances free from retaliation. See Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker v. South Carolina Department of Corrections, 855 F.3d 533, 545 (4th Cir. April 28, 2017)). Importantly, both Martin and Booker were Section 1983 actions and the issue of whether Bivens extends to the First Amendment was not addressed by the Fourth Circuit. Id. Subsequently, the Fourth Circuit issued an unpublished opinion in Patton v. Kimble reversing a district court's

dismissal of an inmate's Bivens action alleging a First Amendment retaliation claim. Patton v. Kimble, 717 Fed.Appx. 271 (4th Cir. 2018). The Fourth Court determined that the district court erred in finding that the inmate failed to state a First Amendment retaliation claim in light of its decision in Booker. Id. at 271-72. The Fourth Circuit, however, did not address the issue of whether Bivens extends to the First Amendment. Id. Based upon the foregoing, the undersigned find that that Plaintiff's First Amendment retaliation claim presents a new Bivens context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a Bivens action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. First, the undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, to the extent Plaintiff alleges that retaliation resulted in the filing of false incident reports, Plaintiff could have sought review of such incident reports pursuant to 28 C.F.R. § 541.7(i). A review of the exhibits submitted by Defendants reveal that Plaintiff took advantage of the foregoing, which resulted in the expungement of two incident reports and a referral of the other incident report back to the UDC for reconsideration. Third, any

retaliation that may have resulted in an extension of Plaintiff's confinement (such as disciplinary action resulting in the loss of good time credit) would be actionable in *habeas corpus* pursuant to 28 U.S.C. 2241. Finally, if Plaintiff is being subjected to ongoing retaliation, he could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff has alternative remedies available to address his allegations of retaliation. See Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018)(finding the inmate had alternative remedies available to address his First Amendment retaliation claim via the BOP's administrative remedy process, review of the incident report pursuant to Section 541.7, and under state law); Reid v. United States, 2018 WL 1588264, * 2 (E.D.Cal. April 2, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, under the Federal Tort Claims Act, a Section 2241 petition for writ of *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens); Muhammad v. Gehrke, 2018 WL 1334936, * 4 (S.D.Ind. March 15, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens); Gonzalez v. Hasty, 269 F.Supp.3d 45, 60 (E.D.N.Y. Sept. 18, 2017)(finding that inmate had two alternative remedies, the filing of administrative complaints and a petition for writ of *habeas corpus* filed pursuant to

28 U.S.C. § 2241); <u>Andrews v. Miner</u>, 2017 WL 7688266, * 4 (N.D.Ala. Aug. 25, 2017)(finding

that the inmate had alternative remedies via the filing of a <u>Bivens</u> claim for excessive force, the

BOP's administrative remedy process, and under the Federal Tort Claims Act).

Irrespective of whether an alternative remedy exists, a <u>Bivens</u> remedy should not be

extended where "there are 'special factors counselling hesitation in the absence of affirmative

action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468).

Although the Supreme Court has not defined what constitutes "special factors counselling

hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must

concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to

consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-

58. Put simply, "a factor must cause a court to hesitate before answering that question in the

affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages

remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since

Congress did not provide for a standalone damages remedy against federal jailers when it passed

the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose

not to extend the *Carlson* damages remedy to cases involving other types of prisoner

mistreatment." <u>Id.</u> The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995,
> which made comprehensive changes to the way prisoner abuse claims must be
> brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress
> had specific occasion to consider the matter of prisoner abuse and to consider the
> proper way to remedy those wrongs.

<u>Id.</u> The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534

U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized

that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of

prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment retaliation claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact

22

of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>, 551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404). In <u>Abbasi</u>, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

<u>Abbasi</u>, 137 U.S. at 1856. The undersigned notes that expanding <u>Bivens</u> to allow a First Amendment retaliation claim by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. A First Amendment retaliation claim requires an inquiry into a defendant's subjective state of mind, which often results in an issue of material fact that cannot be resolved at the dispositive motion stage. <u>See</u> <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted)(An inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."). The consequence of the existence of an issue of material fact is the need for a trial, which results in further litigation costs to the Government. <u>See</u> <u>Gonzalez v. Bendet</u>, 2018 WL 1524752, * 4 (S.D.S.D. March 28, 2018)(finding "that the cost, time, and energy associated with defending a *Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant" and constitute a special factor counselling hesitation); <u>Andrews</u>, 2017 WL 7688266, * 4 – 5(same). Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of <u>Bivens</u> to a First Amendment retaliation claim. Based

upon the foregoing, the undersigned respectfully recommends that the District Court decline to expand <u>Bivens</u> to Plaintiff's First Amendment retaliation claim and that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's retaliation claim.

**3.    <u>False Disciplinary Charges</u>:**

Next, Defendants argue that Plaintiff's allegations of false disciplinary actions fail to state a claim. (Document No. 40, pp. 13 – 14.) In Response, Plaintiff first notes that Defendants are not disputing that Defendant Prout falsified the report. (Document No. 46, p. 3.) Plaintiff complains that Defendants merely argue that Plaintiff has no constitutional right to be free from false reports. (<u>Id.</u>) Plaintiff argues this is incorrect because there is "liberty and justice" for all and he has the "right to 'right a wrong' against myself." (<u>Id.</u>)

Inmates have no constitutional right prohibiting false disciplinary charges against them potentially impacting their liberty interests. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2nd Cir. 1986)("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."); <u>Caver v. Lane</u>, 2015 WL 9077032, * 2 (N.D.W.Va. Dec. 16, 2015)(plaintiff has no constitutional right prohibiting false disciplinary charges); <u>Woods v. United States</u>, 2012 WL 1005010, fn. 5 (W.D.Va. March 22, 2012)(plaintiff "has no actionable constitutional claim based on his allegations of 'false' disciplinary convictions"); <u>McClary v. Fowlkes</u>, 2008 WL 3992637, * 4 (E.D.Va. Aug. 27, 2008)(prisoner has no constitutional right against being falsely accused of conduct that may result in deprivation of protected liberty interest). Rather, they have the right to refute such charges utilizing the procedural due process protections

24

enunciated in <u>Wolff v. McDonnell</u>. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's above claim.

**4.    No Due Process Violation:**

In their Motion, Defendants argue that "there was no due process violation in Plaintiff's disciplinary actions." (Document No. 40, p. 14.) Defendants argue that "[e]ven assuming that Plaintiff's commissary and/or phone privileges were suspended for longer than the time period imposed by the UDC, or imposed for a disciplinary action that was later expunged, he states no due process violation." (<u>Id.</u>) Defendants explain that the loss of commissary and phone privileges fail to implicate a liberty interest. (<u>Id.</u>) In Response, Plaintiff generally argues that "the course of the Defendants' actions established violations of my Due Process rights." (Document No. 46, p. 4.)

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. <u>See</u> U.S. Const. Amend. XIV, § 1; <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. <u>Gaston</u>, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." <u>Gaston v. Taylor</u>, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d

548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate

claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7,

99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at

577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses

a claim of entitlement in those interests "which were not taken away, expressly or by implication,

in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations

omitted). Consequently, in order to establish that a deprivation of his due process rights has

occurred, plaintiff must first identify a liberty interest which is protected by the Due Process Clause

of the United States Constitution. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41

L.Ed.2d 935 (1974)(holding that an inmate cannot be deprived of a protected liberty interest in

good-time credits without procedural due process). [3] Second, the inmate must establish that the

---

[3]    When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected
liberty interest in the inmate's release from confinement is implicated, and minimal procedural
guarantees are recognized. *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d
553 (1985). The Supreme Court stated what procedure is required at a minimum in *Wolff, supra*.
An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence
is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary
hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize
institutional safety or correctional goals, and (3) to receive a written statement of the evidence
relied upon and the reasons for the disciplinary action. *Id.*, 418 U.S. at 563 - 569, 94 S.Ct. at 2978
- 2981. In the instant case, however, there is no allegation or indication that Plaintiff's disciplinary
sanction impacted the duration of his sentence.
        Notwithstanding the foregoing, the undersigned will briefly consider Plaintiff's claim that
he was denied due process when the UDC failed to review video footage. "Prison disciplinary
proceedings are not part of criminal prosecution, and the full panoply of rights due a defendant
in such proceedings does not apply."

denial of the liberty interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Martin v. Duff, 2017 WL 2366997, * 9 (4th Cir. June 1, 2017)(citing Sandin, 515 U.S. at 484, 115 S.Ct. at 2300). "An inmate who fails to satisfy these two requirements '*cannot* invoke the procedural protections of the Due Process Clause.'" Id. (citing Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976))(emphasis in original). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Sandin, 515 U.S. at 484, 115 S.Ct. at 2300.

> a.    **No Liberty Interest in Prison Privileges:**

To the extent Plaintiff alleges a liberty interest in retaining his commissary and telephone

---

*Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975. In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." The UDC determined Plaintiff committed the prohibited act based upon the statement of staff and the inmate's admission that he received the Inmate A&O Handbook containing the rules and regulations of the institution. The undersigned, therefore, finds that the absence of the security video footage did not violate Plaintiff's due process rights because there was "some evidence" to support the UDC's decision. *See Wallace v. Warden, USP Hazelton*, 2013 WL 3819928 (N.D.W.Va. July 23, 2013)(although there was no review of the video footage, the "some evidence" standard was satisfied by the DHO's use of still photos and the testimony of a correctional officer); *Wlash v. Berkebile*, 2011 WL 2417136, * 5 (S.D.W.Va. June 13, 2011)(J. Berger)(the DHO's failure to review video surveillance footage at petitioner's request did not result in a constitutional violation where there was "some evidence" to support the DHO's decision); *Henderson v. Commonwealth of VA*, 2008 WL 204480 (W.D.Va. Jan. 23, 2008)(although petitioner claimed that the video surveillance footage would prove his innocence, the Court determined that petitioner's due process rights were not violated by the absence of additional evidence in the form of video footage because there was sufficient evidence to support the petitioner's punishment); *Raynor v. Jackson*, 2006 WL 33594333 (W.D.N.C. Nov. 20, 2006)(finding that petitioner's due process rights were not violated due to the disciplinary officer's failure to review video footage because there was "some evidence" to support the disciplinary officer's decision).

privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to prison visitation or telephone privileges. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of *Sandin*, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the

28

standard set forth in <u>Sandin</u>."); <u>Principio v. McGinnis</u>, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); <u>Richardson v. Johnson</u>, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); <u>James v. Odom</u>, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship); <u>Ozolina v. Durant</u>, 1996 WL 82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under <u>Sandin</u>, "there is no right to visitation protected by the Due Process Clause."); and <u>White v. Keller</u>, 438 F.Supp. 110, 114 (D.C.Md. 1997), <u>aff'd</u>, 588 F.2d 913 (4th Cir. 1978)("[T]here is no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining commissary and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit.

**b.    No Right to Institution of Choice/Housing Assignment:**

"A federal prisoner has no constitutional right to be housed in the institution of his choice unless federal law or regulations create a liberty interest by imposing substantive limitations on prison officials' exercise of discretion in making prison transfers." <u>Pardo v. FCI Petersburg</u>, 19 F.3d 1429 (4th Cir. 1994)(unpublished)(citing <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245-49, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)); <u>Also see</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). No such limiting law or regulations exists. <u>Pardo</u>, 19 F.3d 1429, * 1. The classification and transfer of federal prisoners falls within the broad discretion of the Bureau of Prisons and Courts lack authority to order that a prisoner be confined to any particular institution.

See 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); also see McKune v. Lile, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators'' expertise."); Meachum, 427 U.S. at 225, 96 S.Ct. at 2539(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); United States v. Williams, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); Hinton v. Federal Bureau of Prisons, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification."). Accordingly, to the extent that Plaintiff is claiming his liberty interest in a certain housing assignment was violated, the undersigned finds that Plaintiff's claim is without merit.

      **c.**      **No Liberty Interest in Inmate Classification/ Programming:**

In their Motion, Defendants argue that Plaintiff has no right to programming. (Document No. 40, p. 16.) In Response, Plaintiff argues that he does have a right to programming. (Document No. 46, pp. 3 – 4.) Plaintiff contends that pursuant to BOP policy, "each inmate program through a course" and then are evaluated every six months. (Id.) Plaintiff states that "the BOP runs a points system where you get scored and rewarded by getting points dropped to get to low level security level institutions." (Id.) Plaintiff explains that "in order for me to get my points dropped, I had to program and stay clear of conduct by not getting any incident reports." (Id.) Plaintiff, therefore, concludes he has a right to program so he can have his points reduced resulting in a lower security level. (Id.)

Federal prisoners have no constitutional or inherent right to receive a particular security or

custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .  And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Furthermore, neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The language of this statute which provides that the "Bureau may

designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[4] Additionally, P.S. 5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[5] states as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in

---

[4]  Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court state imposed the sentence - -
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[5]  P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

their judgment are needed to preserve internal order and discipline and to maintain institutional security").

Furthermore, the BOP's determination concerning Plaintiff's security level does not constitute an "atypical and significant hardship" on Plaintiff in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. at 482, 115 S.Ct. at 2299; Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998)(Issues of housing and transfers are issues which occur within the "day-to-day management of prisons."); also see Hinton v. Federal Bureau of Prisons, 2009 WL 3347158, * 3 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("While Plaintiff's security level causes him to be in a facility which may cause him hardship, the hardship that he faces is not due to a violation of Plaintiff's liberty interests. In addition, Plaintiff does not fall under the *Sandin* protection because his hardship is not one that is significant or atypical compared to other inmates. Furthermore . . . Plaintiff has no liberty interest in receiving a specific security level designation."). Because nothing in the record indicates that Plaintiff's conditions of confinement were atypical or resulted in a significant hardship, the undersigned finds that Plaintiff has failed to demonstrate a due process violation. Thus, Plaintiff does not possess a constitutionally protected interest in his inmate classification. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's due process claim.

### 5.    Verbal Abuse or Harassment:

Defendants argue that to the extent Plaintiff attempts to state a constitutional claim against Defendant Prout for verbal harassment, Plaintiff has failed to state a cognizable claim. (Document No. 40, p. 15.) Plaintiff fails to address the above argument in his Response. (Document No. 46.)

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.")(quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an

34

inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [her] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate

indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

In addition to the above, Plaintiff's claim are governed by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(e). The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001)(quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted)). In light of the foregoing governing standards and principles, the undersigned will consider Plaintiff's claims of verbal threats or harassment.

In his Complaint, Plaintiff appears to allege that Defendant Prout verbally harassed him during his attempt to informally resolve his complaint regarding his commissary restrictions. Defendant Prout allegedly responded to Plaintiff that "I'm not going to do anything for you and you should call on Allah to help." (Document No. 2, p. 2.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. The verbal harassment or verbal abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff's claims of verbal abuse/harassment fails to state a cognizable claim under the Eighth Amendment for which relief can be granted. The undersigned, therefore, respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's claim of verbal abuse/harassment.

**6.      Claim Against Former Warden Johnson:**

In his Complaint, Plaintiff appears to contend that Warden Johnson violated his constitutional rights because he was aware of the alleged retaliation and failed to take corrective action. (Document No. 2, p. 5.) In their Motion, Defendants contend that respondeat superior is not applicable as to Plaintiff's claim against Warden Johnson. (Document No. 40, pp. 18 – 19.) Defendants argue that Warden Johnson's involvement was limited to his administrative remedy

responses, which are not enough to sustain an action against him. (Id.) Plaintiff failed to address the foregoing argument in his Response. (Document No. 46.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Warden Johnson argues that Plaintiff has failed to demonstrate how he was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Warden Johnson violated his constitutional rights with respect to his failure to supervise employees and in responding to his administrative remedy. The evidence of record reveals that Warden

Johnson did respond to administrative remedy requests filed by Plaintiff.[6] (Document No. 2-1, pp. 5, 18, 26, 34, 39, 41, 49.) The dismissal of a <u>Bivens</u> defendant is appropriate, however, where the defendant's sole involvement is the denial of an administrative remedy request. <u>See</u> <u>Wood v. Moss</u>, _____ U.S. at _____, 134 S.Ct. at 2056(quoting <u>Iqbal</u>, 556 U.S. at 683, 129 S.Ct. 1937)("[I]ndividual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted [unconstitutionally].'"); <u>Fellove v. Heady</u>, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003), <u>aff'd</u>, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Thus, the undersigned finds there is no evidence that Warden Johnson was personally involved in the alleged retaliation against Plaintiff, tacitly authorized staffs' alleged retaliatory conduct, or acted with deliberate indifference to a pervasive risk of harm to Plaintiff. Accordingly, the Court finds that Defendants' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants'

---

[6]  Warden Johnson responded to Administrative Remedy Nos. 851422-F1, 852347-F1, 867989-F1, 862410-F1 ,861346-F1, and 866291-F1. (Document No. 2-1, pp. 5, 18, 26, 34, 39, 41, 49.)

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 39) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 5, 2018.

Omar J. Aboulhosn
United States Magistrate Judge